Judge McMahon

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone: (646) 593-8866
Fax: (212) 618-0213
E-mail: rwanchoo@wanchoolaw.com

'09 CIV 8013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AGROFAIR BENELUX B.V., and JEAN VERHEYEN NV, AEGON SCHADEVERZ. N.V, GENERALI SCHADEVERZ. MIJ. N.V AND ALLIANZ VERSICHERUNGS AG as subrogated underwriters,

Plaintiffs,

- Against -

M/V CHIQUITA DEUTSCHLAND, its engines, machinery, tackle etc.,

***in rem***

- and against -

GREAT WHITE FLEET (EUROPE) LTD., and DEUTSCHLAND SHIPPING CORP.,

***in personam***

Defendants.

ECF CASE

09 CIV _____(____)

**VERIFIED COMPLAINT**

Plaintiffs, Agrofair Benelux B.V., Jean Verheyen NV, Aegon Schadeverz. N.V, Generali Schadeverz. Mij. N.V and Allianz Versicherungs AG by their attorneys, Law Offices of Rahul Wanchoo, allege on information and belief as follows:

1. This is an action within the admiralty and maritime jurisdiction of this Honorable Court pursuant to 28 U.S.C. §1333, as hereinafter more fully appears, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. At all material times Plaintiff, Agrofair Benelux B.V., ("Agrofair") was and is a foreign corporation organized and existing under the laws of The Netherlands, with an office and place of business in Koopliedenweg 10, 2991, LN Barendrecht, The Netherlands, and was the consignee and owner of the shipment under a Bill of Lading No. 749122 dated December 7, 2007 ("Bill of Lading").

3. At all material times Plaintiffs, Jean Verheyen N.V., Aegon Schadeverz. N.V, Generali Schadeverz. Mij. N.V and Allianz Versicherungs AG were and are foreign corporations organized and existing under the laws of foreign countries, and are the subrogated underwriters of the cargo under the aforementioned Bill of Lading.

4. At all material times Defendant, Great White Fleet (Europe) Ltd. ("GWF") was and is a corporation organized and existing under the laws of the Bermuda with an office and place of business in 7, Reid Street, 109 Hamilton HM JX Bermuda, and at all material times was and now is engaged in the business as a common carrier of merchandise by water for hire and owned, chartered, managed and/or otherwise controlled the M.V. CHIQUITA DEUTSCHLAND ("Vessel") as a general vessel engaged in the common carriage of merchandise by water for hire between among others, the ports of Santa Marta, Columbia to Antwerp, Belgium.

5. At all material times Defendant, Deutschland Shipping Corporation, was and is a foreign corporation and was the registered owner of the Vessel.

6. On or about December 7, 2007, two 40 feet reefer containers consisting of 1920 boxes of fresh bananas were shipped by C.I. La Samaria S.A., as shipper, and delivered to GWF and the aforementioned Vessel as common carriers and/or bailees, from Santa Marta, Columbia,

shipped in container No. GESU 939445-0 and GESU 936303-8, then being in good order and condition, the Defendants then and there accepted the said shipment so shipped and delivered to them, and in consideration of certain agreed freight charges thereupon paid or agreed to be paid, agreed to transport and carry the said shipment to Antwerp, Belgium, and there deliver same in like good order and condition as when shipped, delivered to and received by them, to Plaintiff Agrofair, as the consignee, all in accordance with the Bill of Lading. A true and correct copy of the Bill of Lading is annexed hereto as **Exhibit A**.

7. Thereafter, the said Vessel arrived at the port of Antwerp, where Defendants failed to make delivery of the shipment in good order and condition, the bananas being no longer fit for sale and considered a total loss, all in violation of the Defendants' obligations and duties as common carriers of merchandise by water for hire.

8. The damages to said shipment as aforesaid were caused by the breach of contract of carriage and/or breach of contract of bailment and/or the negligence of the Defendants, jointly and severally, in the receipt, handling, loading, stowage, carriage, custody, care and discharge of the subject shipment.

9. Plaintiffs have performed all obligations which they were required to perform with respect to the subject shipment.

10 As per the terms of the Bill of Lading, all claims against the Defendants must be brought before the United Stated District Court, Southern District of New York in accordance with the laws of the United States.

11. By reason of the foregoing premises, Plaintiffs have sustained damages, as nearly as the same can now be estimated, no part of which has been paid although duly demanded, in the sum of $50,290.85.

WHEREFORE, Plaintiffs pray that:

1. Process in due form of law may issue against the Defendants, citing it to appear and answer all and singular matters aforesaid;

2. That if Defendants cannot be found within this District then all their property within this District be attached in the sum of $50,290.85, with interest thereon and costs, the sum sued for in this complaint.

3. Judgment be entered in favor of Plaintiffs against Defendants Great White Fleet (Europe) Ltd., and Deutschland Shipping Corporation, and against Defendant M.V. CHIQUITA DEUTSCHLAND, her engines, tackles, etc., jointly and severally, on the cause of action for the amount of Plaintiffs' damages, together with interest and costs and the disbursements of this action; and

4. That process in due form of law according to the practice of this Court in causes of admiralty and maritime claims may issue against the said Vessel, its engines, tackles, etc., and that all persons having or claiming any interest therein be cited to appear and answer under oath, all and singular the matters aforesaid, and that this Court will be pleased to pronounce judgment in favor of Plaintiffs for their damages as aforesaid, with interest, costs and disbursements, and that the said Vessel may be condemned and sold to pay therefore; and

5. That this Court will grant to Plaintiffs such other and further relief as may be just and proper.

Dated: New York, New York
September 18, 2009

LAW OFFICES OF RAHUL WANCHOO
Attorneys for Plaintiffs

By: Rahul Wanchoo
Rahul Wanchoo (RW-8725)

**VERIFICATION**

STATE OF NEW JERSEY)

ss.

COUNTY OF BERGEN )

I , Rahul Wanchoo, being duly sworn, deposes and says:

1. I am an attorney at law and a member of the firm of Law Offices of Rahul Wanchoo, attorneys for Plaintiff.
2. I have read the foregoing Verified Complaint and know the contents thereof and the same are true to the best of my knowledge, information and belief.
3. I believe the matters to be true based on documents and information obtained from employees and representatives of the Plaintiff through its underwriters and attorneys. The reason that this verification is made by deponent and not by the Plaintiff is because Plaintiff is a foreign corporation, whose officers are not in this district, and whose verification cannot be obtained within the time constraints presented by the circumstances of this case.

Rahul Wanchoo
RAHUL WANCHOO

Sworn to and subscribed to
before me this 18 September, 2009.

Notary Public
HICKSON P. KORE
ID # 2377209
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 8/26/2013

Ex A

# GREAT WHITE FLEET LTD.

INTERNATIONAL BILL OF LADING
NOT NEGOTIABLE UNLESS CONSIGNED TO ORDER*
SPACES ENCLOSED IN BLACK BOX CONTAIN SHIPPER'S MEMORANDUM OF PARTICULARS FOR WHICH CARRIER IS NOT RESPONSIBLE

**SHIPPER (COMPLETE NAME AND ADDRESS)**
C.I. LA SAMARIA S.A.
NIT. 819.003.792-1
CRA 1 No. 22-58 PISO 11 EDIFICIO BAHIA CENTRO
TEL. 4211123 - 4210945
SANTA MARTA - COLOMBIA

**BOOKING NO.** 19333MRMB

**BILL OF LADING NO.** SMR 749122

**EXPORT REFERENCES**

**FORWARDING AGENT/F M C NO.**

**CONSIGNEE (COMPLETE NAME AND ADDRESS)**
AGROFAIR BENELUX B.V.
KOOPLIEDENWEG 10
2991 LN BARENDRECHT
THE NETHERLANDS

**POINT AND COUNTRY OF ORIGIN**

**NOTIFY PARTY (COMPLETE NAME AND ADDRESS)**
AGROFAIR BENELUX B.V.
KOOPLIEDENWEG 10
2991 LN BARENDRECHT
THE NETHERLANDS

**ALSO NOTIFY (ROUTING & INSTRUCTIONS)**

COPY NON NEGOTIABLE

| INITIAL CARRIAGE BY (MODE)* | PLACE OF RECEIPT* | FINAL DESTINATION (OF GOODS NOT VESSEL) |
|---|---|---|
| | | |

| VESSEL / VOYAGE | PORT OF LOADING | LOADING PIER / TERMINAL |
|---|---|---|
| CHIQUITA DEUTSCHLAND V0749AE | SANTA MARTA | |

| PORT OF DISCHARGE | PLACE OF DELIVERY* | TYPE OF MOVE (IF MIXED, USE DESCRIPTION OF GOODS BLOCK) |
|---|---|---|
| ANTWERP | | FCL/FCL |

CARRIER'S RECEIPT*

| MARKS / CONTAINERS NOS | | NO. OF PKGS / CONTAINERS | DESCRIPTION OF GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|---|
| DAVILA FAIRTRADE | | 2 | x 40' HC REEFER CONTAINERS S.T.C. | (KGS) | |
| GESU 939445-0 | TARE | | 1.920 BOXES OF FRESH AND GREEN | 38.092,48 | |
| SEAL : A385087 | 3.850 | | ORGANIC BANANAS CAVENDISH. | | |
| A389038 | | | NET WEIGHT : 34.828,80 KGS | | |
| C009344 | | | GROSS WEIGHT : 38.092,48 KGS | | |
| TERMOGRAFO # F422806 | | | | | |
| GESU 936303-8 | TARE: | | | | |
| SEAL : A385093 | 3.850 | | TARE OF CONTAINERS | 7.700,00 | |
| A389037 | | | TOTAL GROSS WEIGHT | 45.792,48 | |
| C009343 | | | | | |
| TERMOGRAFO # F422809 | | | | | |
| | | | FREIGHT COLLECT - CLEAN ON BOARD | | |
| | | | AUTORIZACION DE EMBARQUE DEX N° : | | |
| | | | 1920020070008047 DE DIC.05 DEL 2.007 | | |

**DECLARED VALUE $**

(SEE CLAUSE 18 ON THE REVERSE SIDE OF THIS BILL OF LADING).

**TEMPERATURE INSTRUCTIONS:**
CONTAINERS SET AT THE SHIPPER'S REQUESTED CARRYING INSTRUCTIONS: 13.7 °C + CA DAMPER 100% CLOSED.

| FREIGHT | PREPAID USD | COLLECT USD |
|---|---|---|
| OCFR | | 2.480,00 |
| BAF | | 496,00 |
| CAF | | 248,00 |
| THC DEST | | 220,00 |
| THC COL | 80,00 | |
| AD VALOREM CHARGE | | |
| TOTAL U.S. CURRENCY | | |

RECEIVED from the Merchant, in apparent good order and condition (unless otherwise noted), the number of packages or customary freight units set forth under the Carrier's Receipt above, to be transported hereunder to the Place of Delivery named herein (or, if not so named, to the Port of Discharge named herein) to the Consignee, holder of this Bill of Lading, or on-carrier. Such transport is subject to the terms and conditions on both sides of this Bill of Lading and to the terms and conditions of all other documents issued by the Carrier in connection with such transport (including, if applicable, the Carrier's tariff), and the Merchant in accepting of this Bill of Lading agrees to be bound by all such terms and conditions.

The Shipper's Memorandum is not a term of this Bill of Lading but contains particulars furnished by the shipper solely for its use (including the description, weight and measurement of the goods by the Shipper to be contained in the Shipment), and the Carrier has no knowledge of and makes no representation as to the accuracy of any particulars in the Shipper's Memorandum

IN WITNESS WHEREOF, the Carrier has signed three original Bill of Lading, all of this tenor and date, and if one is accomplished the others shall be void.

DATED: December 7th 2007 SIGNATURE [signature]

Santa Marta - Colombia

On Behalf of Carrier GREAT WHITE FLEET (EUROPE) LTD.
Directly or Through the following agent:

NAME OF AGENT (IF ANY): Turbaduanas Ltda. Vaz. C.S.
AGENTES MARITIMOS

GWF 05-146-47 (8/06)

*Applicable only where the place of receipt or delivery differs from the port of loading or discharge, respectively.

ORIGINALS : 0 / ZERO

**IN ACCEPTING THIS BILL OF LADING, The Shipper, Consignee, holder hereof and the owners of the goods (herein collectively the "Merchant") agree, as if signed by each of them, to be bound by all stipulations, exceptions and conditions stated herein whether written, printed, stamped or incorporated on the face and back hereof, which shall govern the relations whatsoever that may be between the Merchant and Carrier, its agents, contractors, employees, master and Vessel in every contingency occurring and whether Carrier be acting as such or bailee.**

1. **VESSEL; ON BOARD** (a) VESSEL - the naming of a vessel in a Bill of Lading shall be for convenience only. The vessel named may not be a vessel which actually transports the Shipment covered by this Bill of Lading. (b) ON BOARD BILLS OF LADING, a Bill of Lading may be endorsed with the phrase "On Board", which means on board any mode of transport to ship the goods.

2. **DEFINITIONS** (a) CARRIER means Great White Fleet (US) Ltd., the Vessel, and the Vessel's owner, operator and master; (b) MERCHANT means the Shipper, Consignee, Receiver, any holder of this Bill of Lading, the owner of the Shipment, and anyone entitled to possession of the Shipment; (c) NOTIFY PARTY means the person to whom the Carrier may give notice of the Shipment's arrival, but the Carrier shall not be liable for failure to give such party notice; (d) VESSEL means the vessel named on the other side of this Bill of Lading and/or any substitute watercraft on which the Shipment is carried during Ocean Carriage; (e) SHIPMENT means the entirety of the packages, cargo and goods described on the other side of this Bill of Lading (or any attachment hereto) and received by the Carrier for transport under this Bill of Lading (including the Container unless provided by the Carrier); (f) CONTAINER means a dry, refrigerated or tank container or trailer used to stow or consolidate goods; (g) INLAND CARRIER means any inland trucker, bargeman, drayman, railroad, trucker, and/or any other person employed to transport the Shipment between the Vessel and an Interior Point; (h) INTERIOR POINT means any place of receipt and/or delivery of the Shipment other than the port at which the Ocean Carriage of the Shipment begins or ends; (i) INTERMODAL TRANSPORT means transport in which the Carrier is required under this Bill of Lading to pick up and/or deliver a Shipment at an Interior Point; (j) OCEAN CARRIAGE means the transport, or portion of the transport, of the Shipment commencing at the point at which the Carrier receives the Shipment from the Merchant or the Inland Carrier at the Vessel's port of loading until the delivery of the Shipment to the Merchant or the Inland Carrier at the Vessel's port of discharge; (k) The term "apparent good order and condition" when used in this Bill of Lading: with reference to iron, steel or metal products does not mean that the goods, when received by the Carrier, were free of visible rust or moisture; with reference to lumber, timber or other wood products does not mean that the goods, when received by the Carrier, were free from visible stains, discoloration, moisture, shakes, holes, warps, chafage, breakage or splitting; with reference to vehicles which includes automobiles, trucks, rolling stocks, tractors and machinery does not mean that the goods, when received by the Carrier, were free from scratches, dents, nicks, bends, holes, or cuts; with reference to cotton or cotton products does not mean that, when received by the Carrier, the covering was sufficient, uniform, or in sound condition, or that there was no damage resulting from the condition of the covering. If the Merchant so requests, a substitute Bill of Lading will be issued omitting the above definition and setting forth any notations which may appear on the mate's or tally clerk's receipts or similar document.

3. **CARRIER'S TARIFF** If any service contract or Carrier's tariff is/are applicable hereto, all terms of the service contract and/or the Carrier's tariff are incorporated herein and the Carrier is entitled to all rights, benefits and immunities under and all limitations of and/or exemptions from liability contained in said service contract or Carrier's tariff. If any term(s) of any service contract or Carrier's tariff are inconsistent with this bill of lading, the bill of lading shall prevail.

4. **CLAUSE PARAMOUNT** (a)(i) During Ocean Carriage, this Bill of Lading and the Carrier's liability and obligations while acting in any capacity whatsoever, including but not limited to a Carrier, bailee, agent or supplier of a Container, shall be governed by the United States Carriage of Goods by Sea Act, 1936 (COGSA). (ii) If it is adjudged that any other legislation similar to the International Brussels Convention of 1924 as amended (the Hague Rules) compulsorily applies to the Shipment during Ocean Carriage, this Bill of Lading shall have effect subject to the provisions of such legislation, which shall be deemed to be incorporated herein to the extent compulsorily required. (b) Where the Carrier has possession and custody of the cargo during any time other than the Ocean Carriage, Carrier's liability shall be governed by COGSA, as amended by this Bill of Lading except with respect to road and rail transit between countries in Europe, where the Carrier's liability will be determined according to the Convention on the Contract for the International Carriage of Goods by Road (CMR), dated May 19, 1956, and during rail carriage between countries in Europe according to the International Agreement on Railway Transports (CIM) dated February 25, 1961.

5. **DESCRIPTION, NATURE AND OWNERSHIP OF SHIPMENT** (a) The description and particulars of the Shipment have been furnished by the Merchant and the Merchant warrants to the Carrier that the description and particulars, including but not limited to the weight, quantity, measurement, contents, marks, numbers, seal numbers and value, are correct and that the Shipment is fit for the transport in all respects and can be safely carried without injury to people, itself and/or other property. (b) If the Shipment is described as "said to contain" or "Shipper's load, stow and count", the Merchant acknowledges that the Carrier makes no representation as to the accuracy of the description, that the Carrier may not have scales or other means to verify the weight and/or contents of a Container supplied by the Merchant and that it may otherwise be impractical for the Carrier to determine the accuracy of the Merchant's description. (c) The Merchant warrants that it is the owner and entitled to possession of the Shipment described herein, or that the Merchant has the authority of the owner and all who are entitled to possession of the Shipment to agree to the terms of this Bill of Lading. (d) The Merchant warrants that the Shipment can be safely transported in a non refrigerated Container or in a cargo compartment without special protective or climatic control services, unless the Merchant has given the Carrier prior notice of the Merchant's requirement(s) and has set forth on the other side of this Bill of Lading specific instructions as to temperature, ventilation, stowage and the like. (e) The Merchant hereby warrants that (i) the Shipment is not liable to become dangerous, flammable, corrosive, noxious, explosive, radioactive, damaging to property or persons, or otherwise hazardous or (ii) if the Shipment is of such a nature, the Merchant has fully disclosed the nature of the Shipment, has received the prior written consent of the Carrier to the Merchant's delivering the Shipment to the Carrier, and the Shipment, the Container and any other covering, and the markings thereon shall comply fully with all applicable law. (f) If the Merchant breaches any of the warranties set forth in this clause, the Carrier shall, in addition to all other rights at law or by contract, be at liberty to take any act, including but not limited to rejecting, jettisoning and/or discharging the Shipment and/or rendering it innocuous and/or delivering it to the Merchant at a place other than stated on the other side of the Bill of Lading, without liability on the part of the Carrier or compensation to the Merchant, and the Merchant shall indemnify the Carrier for all attorneys' fees, costs, liabilities, losses and damages, including but not limited to indirect and/or consequential damages, and/or any overhead costs incurred by the Carrier in connection with such Shipment.

6. **STOWAGE IN CONTAINERS BY CARRIER** If the Merchant delivers a Shipment to the Carrier not enclosed or stowed in a Container, the Carrier may stow the Shipment into a container, but if so stowed by the Carrier, the Carrier may deliver the Shipment unstowed from the Container unless otherwise agreed and noted on the other side of this Bill of Lading.

7. **STOWAGE IN CONTAINERS BY MERCHANT** If the Merchant delivers the Shipment to the Carrier in a Container, the Carrier has no duty to inspect or secure the Shipment within the Container, and the Carrier shall not be liable for loss of or damage to the Shipment because of shifting, overloading or failure to properly package, stow or secure the Shipment in the Container. The Merchant or Merchant's agent shall properly seal containers loaded by them. The Merchant, or its agents, shall carefully inspect and clean containers before packing them to insure their suitability for its goods. Acceptance and packing of the containers shall be prima facie evidence that the containers were sound, clean and suitable for use and shall relieve Carrier of responsibility for any damage to goods carried resulting from the condition of the container used. By delivering the Container to the Carrier, the Merchant warrants that the Shipment is in good order and condition, fit for transport, of even weight distribution, and otherwise properly packaged, stowed and secured in the Container, and that the Container is sound and seaworthy. Notwithstanding the foregoing, the Carrier at any time may, but is under no obligation to, inspect the Shipment and if, in the Carrier's sole opinion, the Shipment is improperly packaged, stowed or secured in any respect, the Carrier may: reject or discharge the Shipment or any part thereof at the point of inspection and carry the remainder to destination; require the Merchant to resecure and/or restow the Shipment; and/or undertake to correct any obvious deficiency in the securing or stowage. In undertaking and/or supervising any of the foregoing acts, the Carrier shall be acting as agent for the Merchant, all risk, loss, cost, expense and/or liability in connection therewith shall be solely the Merchant's, and the Carrier shall not be responsible for the condition and/or accuracy in the count of the Shipment.

8. **PERISHABLE SHIPMENT DELIVERED TO CARRIER WITHOUT CONTAINER; REFRIGERATION** If a perishable Shipment requiring special temperature or climatic conditions is delivered to the Carrier not enclosed or stowed in a refrigerated Container, the sole responsibility of the Carrier shall be to stow the Shipment in a refrigerated compartment or into a refrigerated Container and to set and monitor the thermostatic controls in accordance with the Merchant's instructions set forth on the other side of this Bill of Lading, and the Carrier shall have no liability for spoilage and/or other damage to the Shipment if, within a reasonable time after completion of stowage and

incurred by and/or levied on the Carrier and/or t
act and/or omission, and/or as the result of the
shall constitute additional freight subject to all th
hereunder are earned and payable in full without
Shipment lost or not lost, damaged or delayed.
on the Shipment and all sub freights for all freight
and the Carrier may enforce this lien by public or
survive delivery of the Shipment and payment to
the Merchant and their principals and against a
Merchant shall be deemed an agent of the Me
Merchant's obligation until the funds are actually
to Carrier for the payment of all freight, demurrag
court costs, expenses and reasonable attorney

13. **SCOPE OF TRANSPORT; ROUTES; D**
ing by any route, whether or not it is the most d
Carrier's advertised route, whether or not in usu
of destination for bunkering, loading and/or dis
dock and/or for any other purpose of the Carri
may undertake the transport by any vessel or
lighter, discharge, and/or store the Shipment or
or without pilots, tow and be towed, deviate to
of any of the foregoing shall not constitute an
transport performed by vessels under the Carr
though the freight for the whole transport has b
discharge or place of delivery at any particular ti
indirect and/or consequential damages and/or
actual physical custody of the cargo. In some
Inland Carriers to safeguard the Carrier's conta
Carrier's container or agreeing to use the Inland
Carrier arranged by the Carrier or its agents, the
the Shipment during the inland transportation.

14. **MATTERS AFFECTING PERFORMAN**
of this Bill of Lading is or is likely to be affected by
make it impossible, imprudent, unlawful and/or
avoided by the exercise of reasonable diligenc
Merchant treat the performance of this Bill of La
port or place whatsoever whether enclosed in
in the circumstances, whereupon the responsib
entitled to full freight and charges on any Shipme
and delivery and storage of the Shipment at suc
or apprehension of war declared or undeclared,
bances or demands or directions by any person
hijacking, blockage of port or place or interdict
regulations or restrictions; strikes, lockouts or oth
Carrier and/or its sub-contractors; congestion o
facilities for discharge, delivery or other handling
ice, landslide or other obstacle in navigation or

15. **SUBCONTRACTING; EXEMPTIONS**
and their respective servants and agents (inclu
warehousing, handling and any and all of the C
contractors, including but not limited to stevedor
limitations, conditions, defenses, limitations of lia
Under no circumstances shall the Merchant have
employees, and independent contractors, and n
contracts with others. Further, Merchant agrees
any of the Carrier's agents and/or independent

16. **TRANSSHIPMENT; INTERMODAL TR**
Point, the Carrier may choose any means of tr
terms of the Bill of Lading of the Inland Carrier a
(b) If this Bill of Lading requires the Carrier to pick
transport: (i) the Carrier shall have the benefit of a
be deprived or have liability greater than, the ter
during any portion of the transport other than the
damage took place during the Ocean Carriage,
Carrier, but in no event shall the Carrier be depri
Merchant pays the Inland Carrier directly for trans
Carrier, even where such inland transport is arra

17. **BOTH TO BLAME COLLISION CLAU**
object as a result of negligence of another ship a
of the Carrier for which the Carrier is not liable by
and/or as trustee for the owner and/or demise
the other ship and/or her owners insofar as suc
the Merchant, paid and/or payable by the other
the Vessel and/or her owner and/or demise cha

18. **GENERAL AVERAGE; NEW JASON**
with the York-Antwerp Rules 1994 and the laws
required from the Merchant prior to delivery of t
Merchant's obligation to make payment shall su
commencement of the transport under this Bill o
and/or for the consequences of which the Car
contribute with the Carrier in general average to
made or incurred and shall pay all salvage and
operated by the Carrier, salvage shall be paid a

19. **VALUATION; LIMIT OF LIABILITY**
affiliate(s) shall in any event become liable for any
per Package, or in the case of goods not ship
inserted in the appropriate space on the other s
event shall the Carrier's liability exceed the inv

[illegible]

4. **CARRIER LIABILITY** ... Ocean Carriage, this Bill of Lading and the Carrier's liability and obligations while acting in any capacity whatsoever, including but not limited to a Carrier, bailee, agent or supplier of a Container, shall be governed by the United States Carriage of Goods by Sea Act, 1936 (COGSA). (a) If it is adjudged that any other legislation similar to the International Brussels Convention of 1924 as amended (the Hague Rules) compulsorily applies to the Shipment during Ocean Carriage, this Bill of Lading shall have effect subject to the provisions of such legislation, which shall be deemed to be incorporated herein to the extent compulsorily required; (b) Where the Carrier has possession and custody of the cargo during any time other than the Ocean Carriage, Carrier's liability shall be governed by COGSA, as amended by this Bill of Lading except with respect to road and rail transit between countries in Europe, where the Carrier's liability will be determined according to the Convention on the Contract for the International Carriage of Goods by Road (CMR), dated May 19, 1956, and during rail carriage between countries in Europe according to the International Agreement on Railway Transports (CIM) dated February 25, 1961.

5. **DESCRIPTION, NATURE AND OWNERSHIP OF SHIPMENT** (a) The description and particulars of the Shipment have been furnished by the Merchant and the Merchant warrants to the Carrier that the description and particulars, including but not limited to the weight, quantity, measurement, contents, marks, numbers, seal numbers and value, are correct and that the Shipment is fit for the transport in all respects and can be safely carried without injury to people, itself and/or other property. (b) If the Shipment is described as "said to contain" or "Shipper's load, stow and count", the Merchant acknowledges that the Carrier makes no representation as to the accuracy of the description, that the Carrier may not have scales or other means to verify the weight and/or contents of a Container supplied by the Merchant and that it may otherwise be impractical for the Carrier to determine the accuracy of the Merchant's description; (c) The Merchant warrants that it is the owner and entitled to possession of the Shipment described herein, or that the Merchant has the authority of the owner and all who are entitled to possession of the Shipment to agree to the terms of this Bill of Lading; (d) The Merchant warrants that the Shipment can be safely transported in a non-refrigerated Container or in a cargo compartment without special protective or climatic control services, unless the Merchant has given the Carrier prior notice of the Merchant's requirement(s) and has set forth on the other side of this Bill of Lading specific instructions as to temperature, ventilation, stowage and the like; (e) The Merchant hereby warrants that (i) the Shipment is not liable to become dangerous, flammable, corrosive, noxious, explosive, radioactive, damaging to property or persons, or otherwise hazardous or (ii) if the Shipment is of such a nature, the Merchant has fully disclosed the nature of the Shipment, has received the prior written consent of the Carrier to the Merchant's delivering the Shipment to the Carrier, and the Shipment, the Container and any other covering, and the markings thereon shall comply fully with all applicable law; (f) If the Merchant breaches any of the warranties set forth in this clause, the Carrier shall, in addition to all other rights at law or by contract, be at liberty to take any act, including but not limited to rejecting, jettisoning and/or discharging the Shipment and/or rendering it innocuous and/or delivering it to the Merchant at a place other than stated on the other side of the Bill of Lading, without liability on the part of the Carrier or compensation to the Merchant, and the Merchant shall indemnify the Carrier for all attorneys' fees, costs, liabilities, losses and damages, including but not limited to indirect and/or consequential damages, and/or any overhead costs incurred by the Carrier, in connection with such Shipment.

6. **STOWAGE IN CONTAINERS BY CARRIER** If the Merchant delivers a Shipment to the Carrier not enclosed or stowed in a Container, the Carrier may stow the Shipment into a container, but if so stowed by the Carrier, the Carrier may deliver the Shipment unstowed from the Container unless otherwise agreed and noted on the other side of this Bill of Lading.

7. **STOWAGE IN CONTAINERS BY MERCHANT** If the Merchant delivers the Shipment to the Carrier in a Container, the Carrier has no duty to inspect or secure the Shipment within the Container, and the Carrier shall not be liable for loss of or damage to the Shipment because of shifting, overpacking or failure to properly package, stow or secure the Shipment in the Container. The Merchant or Merchant's agent shall properly seal containers loaded by them. The Merchant, or its agents, shall carefully inspect and clean containers before packing them to insure their suitability for its goods. Acceptance and packing of the containers shall be prima facie evidence that the containers were sound, clean and suitable for use and shall relieve Carrier of responsibility for any damage to goods carried resulting from the condition of the container used. By delivering the Container to the Carrier, the Merchant warrants that the Shipment is in good order and condition, fit for transport, of even weight distribution, and otherwise properly packaged, stowed and secured in the Container, and that the Container is sound and seaworthy. Notwithstanding the foregoing, the Carrier at any time may, but is under no obligation to, inspect the Shipment and if, in the Carrier's sole opinion, the Shipment is improperly packaged, stowed or secured in any respect, the Carrier may reject or discharge the Shipment or any part thereof at the point of inspection and carry the remainder to destination, require the Merchant to re-secure and/or restow the Shipment; and/or undertake to correct any obvious deficiency in the securing or stowage. In undertaking and/or supervising any of the foregoing acts, the Carrier shall be acting as agent for the Merchant, all risk, loss, cost, expense and/or liability in connection therewith shall be solely the Merchant's; and the Carrier shall not be responsible for the condition and/or accuracy in the count of the Shipment.

8. **PERISHABLE SHIPMENT DELIVERED TO CARRIER WITHOUT CONTAINER; REFRIGERATION** If a perishable Shipment requiring special temperature or climatic conditions is delivered to the Carrier not enclosed or stowed in a refrigerated Container, the sole responsibility of the Carrier shall be to stow the Shipment in a refrigerated compartment or into a refrigerated Container and to set and monitor the thermostatic controls in accordance with the Merchant's instructions set forth on the other side of this Bill of Lading, and the Carrier shall have no liability for spoilage and/or other damage to the Shipment if, within a reasonable time after completion of stowage, and closure of the compartment or Container, the temperature is maintained to within plus or minus 5 degrees Fahrenheit of the Merchant's instructions stated on the other side of this Bill of Lading. In no event shall the Carrier be required to maintain a temperature of less than minus 20 degrees Fahrenheit. The Carrier shall have no liability or obligation for USDA cold treatment.

9. **PERISHABLE SHIPMENT DELIVERED TO CARRIER IN CONTAINER; REFRIGERATION** (a) If a perishable Shipment in a Merchant or Carrier supplied refrigerated Container is delivered to the Carrier by the Merchant at the commencement of transport hereunder, whether at an Interior Point or the port of loading, the Merchant warrants that the Shipment has the temperature listed on the other side of this Bill of Lading and that the Shipment has been properly stowed and the thermostatic controls properly set. The Merchant has sole responsibility for the operation and maintenance of the temperature control equipment before the Container is delivered to the Carrier and after it is delivered by the Carrier after completion of transport. The Carrier shall have no liability for spoilage or other damage to the Shipment if the temperature is maintained to within plus or minus 5 degrees Fahrenheit of the Merchant's instructions stated on the other side of this Bill of Lading; and in no event shall the Carrier be required to maintain a temperature of less than minus 20 degrees Fahrenheit; (b) When the Merchant supplies the Container into which a Shipment is packed, (i) the Merchant warrants that the Container is in good working order, (ii) if the Container is refrigerated, the Carrier shall have no liability or obligation except to monitor the Container's thermostatic controls in accordance with the Merchant's instructions set forth on the other side of this Bill of Lading and to advise the Merchant of any malfunction or irregularity, (iii) the Carrier shall be under no obligation to inspect or repair the Container but shall have the liberty to undertake repairs, at the risk and expense of the Merchant; and (iv) under no circumstance shall the Carrier be responsible for the loss of or damage to the Shipment arising out of a defect, malfunction and/or irregularity of the Container unless same arises out of causes for which the Carrier would otherwise be liable under this Bill of Lading. (c) The Carrier shall have no liability or obligation for USDA cold treatment.

10. **MERCHANT'S OBLIGATION TO TAKE DELIVERY** The Merchant warrants that it shall take delivery and custody of and receive the Shipment at destination within the free time period specified in the Carrier's tariff or, if no period is specified or applicable, within five (5) days of the Carrier's notice of delivery of the Shipment at destination, after which: (a) all of the Carrier's duties and/or liabilities for or in connection with the Shipment shall cease, (b) all risks, loss, damage, cost, expense and liability in connection with the Shipment shall be the Merchant's, and (c) the Carrier may unload a Carrier supplied Container and/or exercise any of the Carrier's rights stated in clause 14 of this Bill of Lading.

11. **STOWAGE ON DECK** A Shipment stowed in a Container by either the Merchant or the Carrier may be carried on deck but shall be deemed stowed under deck for all purposes, including general average. When a Shipment stowed in a Container is carried on deck, the Carrier shall not be required to give notice to the Merchant or specially note, mark or stamp a statement of on deck stowage on the other side of this Bill of Lading, any custom to the contrary notwithstanding. The Carrier is entitled to the benefits of COGSA, the Hague Rules, or legislation similar thereto as provided for in clause 4 of this Bill of Lading for any Shipment stowed in a Container on deck. A Shipment carried on deck but not stowed in a Container and noted to be carried on deck shall be carried at the sole risk of the Merchant without any warranty or liability on the part of the Carrier in connection with the carriage of such Shipment.

12. **FREIGHT AND CHARGES; LIEN** The Merchant shall supply the necessary information on which to calculate the freight and/or other charges, but the Carrier may, at its option and at any time, open the Container and examine, weigh, measure and/or value all or any part of the Shipment. If the Carrier determines that the Merchant's description of the Shipment is erroneous in any respect, the Carrier may recalculate the total freight and charges, and if additional freight is payable, the Shipment, Merchant and their principals shall be joint and severally liable and/or indemnify the Carrier for additional freight as well as all costs, liabilities, penalties, fines and expenses incurred in examining, weighing, measuring and valuing the Shipment and collecting the additional freight, charges and expenses. The Shipment, Merchant and their principals shall be joint and severally liable for all expenses, fines, dues, tax, impost, loss, damage and/or detention sustained and/or

... avoidable, unlawful and/or ... avoided by the exercise of reasonable diligenc... Merchant treat the performance of this Bill of La... port or place whatsoever (whether enclosed in ... In the circumstances, whereupon the responsib... entitled to full freight and charges on any Shipm... and delivery and storage of the Shipment at su... or apprehension of war declared or undeclared, ... bances or demands or directions by any perso... hijacking, blockage of port or place or interdict... regulations or restrictions; strikes, lockouts or ot... Carrier and/or its sub-contractors; congestion ... facilities for discharge, delivery or other handling... ice, landslide or other obstacle in navigation or ...

15. **SUBCONTRACTING; EXEMPTIONS** ... and their respective servants and agents (inclu... warehousing, handling and any and all of the C... contractors, including but not limited to stevedor... limitations, conditions, defenses, limitations of lia... Under no circumstances shall the Merchant have... employees, and independent contractors, and ... contracts with others. Further, Merchant agrees ... any of the Carrier's agents and/or independent ...

16. **TRANSSHIPMENT; INTERMODAL TR...** Point, the Carrier may choose any means of tr... terms of the Bill of Lading of the inland Carrier ... (b) If this Bill of Lading requires the Carrier to pick... transport: (i) the Carrier shall have the benefit of a... be deprived or have liability greater than, the term... during any portion of the transport other than the... damage took place during the Ocean Carriage, ... Carrier, but in no event shall the Carrier be depri... Merchant pays the inland Carrier directly for trans... Carrier, even where such inland transport is arra...

17. **BOTH TO BLAME COLLISION CLAUS...** object as a result of negligence of another ship ar... of the Carrier for which the Carrier is not liable by ... and/or as trustee for the owner and/or demise c... the other ship and/or her owners insofar as such... the Merchant, paid and/or payable by the other ... the Vessel and/or her owner and/or demise cha...

18. **GENERAL AVERAGE; NEW JASON C...** with the York-Antwerp Rules 1994 and the laws, ... required from the Merchant prior to delivery of th... Merchant's obligation to make payment shall sur... commencement of the transport under this Bill of... and/or for the consequences of which the Carri... contribute with the Carrier in general average to th... made or incurred and shall pay all salvage and s... operated by the Carrier, salvage shall be paid as...

19. **VALUATION; LIMIT OF LIABILITY** (a... affiliates) shall in any event become liable for any ... per Package, or in the case of goods not shipp... inserted in the appropriate space on the other si... event shall the Carrier's liability exceed the invoi... damaged. (b) For the purpose of this clause, the... load, groupage and /or assemblage, shall also ... goods not packaged to withstand break bulk han... All Kinds or shipped under lump sum freight rate... have enumerated on the reverse side of this bill o... carried in a Container, whether or not the Contain... cargo shipped unpacked, including trailers, truck... freight charges; (c) For Intermodal Transport, if the... the Ocean Carriage, or where the Merchant is una... the container shall be deemed the package for t...

20. **NOTICE OF LOSS OR DAMAGE; TIME...** damage shall be given to the Carrier prior to rem... to delivery shall be prima facie evidence that the ... notice of loss for concealed damage must be giv... is a condition precedent to maintaining any clai... liability in any capacity under this Bill of Lading an... and/or any other property of the Merchant, unle... delivered or should have been delivered, or such... an Intermodal Transport. Suit shall not have been ... of process has been effected.

21. **MERCHANT'S LIABILITY AND INDEM...** responsibilities, warranties, duties and/or functio... of freight, the Merchant and their principals shal... against and hold the Carrier harmless from all loss... including but not limited to reasonable attorneys' f...

22. **JURISDICTION** All claims by the Carrier or ... of Lading and/or the relationships created thereby... in the United States District Court, Southern Distr...

23. **APPLICABLE LAW** All rights, duties and /o... according to the laws of the United States, or, wh...

24. **ENTIRE AGREEMENT; VARIATION OF ...** and/or Carrier's tariff, including all the provisions s... the parties, and any prior agreement, booking no... stated herein; (b) No servant or agent of the Carr... specifically the time for suit, unless in writing and s... of this Bill of Lading is held to be invalid under an... shall be void to that extent but no further.

**ereof and the owners of the goods (herein
bound by all stipulations, exceptions and
d on the face and back hereof, which shall
arrier, its agents, contractors, employees,
r acting as such or bailee.**

I be for convenience only. The vessel named may
e ON BOARD BILLS OF LADING, a Bill of Lading
nsport to ship the goods.
nd the Vessel's owner, operator and master; (b)
he owner of the Shipment, and anyone entitled to
may give notice of the Shipment's arrival, but the
ssel named on the other side of this Bill of Lading
e; (e) SHIPMENT means the entirety of the pack-
nt hereto) and received by the Carrier for transport
TAINER means a dry, refrigerated or tank container
cker, bargeman, drayman, railroad, hauler, and/or
or Point; (h) INTERIOR POINT means any place of
of the Shipment begins or ends; (i) INTERMODAL
e pick up and/or deliver a Shipment at an Interior
Shipment commencing at the point at which the
of lading until the delivery of the Shipment to the
good order and condition" when used in this Bill of
when received by the Carrier, were free of visible
en that the goods, when received by the Carrier,
kage or splitting; with reference to vehicles which
t the goods, when received by the Carrier, were
ion products does not mean that, when received
ss no damage resulting from the condition of the
he above definition and setting forth any notations

all terms of the service contract and/or the Carrier's
les under and all limitations of and/or exemptions
ice contract or Carrier's tariff are inconsistent with

Carrier's liability and obligations while acting in any
Container, shall be governed by the United States
ation similar to the International Brussels Conven-
ing Ocean Carriage, this Bill of Lading shall have
orated herein to the extent compulsorily required;
than the Ocean Carriage, Carrier's liability shall be
d rail transit between countries in Europe, where
e International Carriage of Goods by Road (CMR),
the International Agreement on Railway Transports

ription and particulars of the Shipment have been
n and particulars, including but not limited to the
correct and that the Shipment is fit for the transport
perty; (b) if the Shipment is described as "said to
r makes no representation as to the accuracy of
t and/or contents of a Container supplied by the
y of the Merchant's description; (c) The Merchant
on, or that the Merchant has the authority of the
his Bill of Lading; (d) The Merchant warrants that
ompartment without special protective or climatic
requirement(s) and has set forth on the other side
ito; (e) The Merchant hereby warrants that (i) the
radioactive, damaging to property or persons; or
osed the nature of the Shipment, has received the
r, and the Shipment, the Container and any other
ant breaches any of the warranties set forth in the
take any act, including but not limited to rejecting,
ng it to the Merchant at a place other than stated
ession to the Merchant, and the Merchant shall
g but not limited to indirect and/or consequential
Shipment.
t to the Carrier not enclosed or stowed in a Con-
r, the Carrier may deliver the Shipment unstowed
king.
Shipment to the Carrier in a Container, the Car-
r shall not be liable for loss of or damage to the
the Shipment in the Container. The Merchant or
ents, shall carefully inspect and clean containers
the containers shall be prima facie evidence that
sibility for any damage to goods carried resulting
Merchant warrants that the Shipment is in good
packaged, stowed and secured in the Container,
ier at any time may, but is under no obligation to,
ackaged, stowed or secured in any respect, the
n and carry the remainder to destination; require
obvious deficiency in the securing or stowage. In
gent for the Merchant, all risk, loss, cost, expense
ll not be responsible for the condition and/or ac-

incurred by and/or levied on the Carrier and/or the Vessel in connection with the Shipment caused by the Shipment and/or the Merchant's act and/or omission, and/or as the result of the act of any government and/or persons acting under color of authority, and such charges shall constitute additional freight subject to all the terms and conditions of this Bill of Lading. All freight, additional freight and charges due hereunder are earned and payable in full without discount, offset or deduction upon delivery of the Shipment to the Carrier, Vessel and/or Shipment lost or not lost, damaged or delayed, and whether or not the transport is broken up or abandoned. The Carrier shall have a lien on the Shipment and all sub freights for all freight, dead freight, demurrage, additional freight, charges and all other amounts due hereunder and the Carrier may enforce this lien by public or private sale upon reasonable notice to any party identified in the Bill of Lading. This lien shall survive delivery of the Shipment and payment for the sums constituting the lien may be enforced jointly and severally against the Shipment, the Merchant and their principals and against any other property of the Merchant or their principals. A freight forwarder employed by the Merchant shall be deemed an agent of the Merchant and not the Carrier and any payment to a freight forwarder shall not extinguish the Merchant's obligation until the funds are actually received by the Carrier. The Merchant and their principals shall be jointly and severally liable to Carrier for the payment of all freight, demurrage, general average and other charges due hereunder, without discount, together with any court costs, expenses and reasonable attorney fees incurred in collecting any sums due Carrier.

13. **SCOPE OF TRANSPORT; ROUTES; DELAY** The Carrier shall have the liberty to undertake the transport under this Bill of Lading by any route, whether or not it is the most direct route, may proceed, return to, stay at and/or omit any ports whether included in the Carrier's advertised route, whether or not in usual or customary geographical rotation and/or in a direction contrary to and beyond the port of destination for bunkering, loading and/or discharging of goods and/or passengers, maintenance of Vessel and/or crew, repairs, dry dock and/or for any other purpose of the Carrier, and may retain the Shipment on board for an additional round trip voyage. The Carrier may undertake the transport by any vessel and/or other means of transport, employ feeder vessels, consolidate, reconsign, tranship, lighter, discharge, and/or store the Shipment hereunder and/or forward the Shipment by any alternate conveyance. The Vessel may sail with or without pilots, tow and be towed, deviate to save life, vessels and/or other property in distress, and the Merchant agrees that exercise of any of the foregoing shall not constitute an unreasonable deviation. The responsibility of the Carrier shall be limited to that part of the transport performed by vessels under the Carrier's management and the Carrier shall not be liable for any other part of the transport even though the freight for the whole transport has been collected. The Carrier does not undertake that the Shipment shall arrive at the port of discharge or place of delivery at any particular time or to meet any particular market or use and the Carrier shall not be liable for any direct, indirect and/or consequential damages and/or damages caused by delay. The Carrier can only be liable for the Shipment when it has actual physical custody of the cargo. In some Central American ports, the Carrier or its agents may require the Merchant to use certain Inland Carriers to safeguard the Carrier's containers. In these instances, the Merchant has the option of unloading their cargo from the Carrier's container or agreeing to use the Inland Carrier arranged by the Carrier or its agents. Should the Merchant agree to use the Inland Carrier arranged by the Carrier or its agents, the Carrier is under no obligation or liability under this bill of lading for any damage or loss to the Shipment during the inland transportation.

14. **MATTERS AFFECTING PERFORMANCE** If at any time the Vessel, the Carrier, the Carrier's equipment and/or the performance of this Bill of Lading is or is likely to be affected by any hindrance, risk, delay, difficulty and/or disadvantage of whatsoever kind which would make it impossible, imprudent, unlawful and/or commercially impractical to continue the voyage and/or transport and which cannot be avoided by the exercise of reasonable diligence, the Carrier (whether or not the transport has commenced) may without notice to the Merchant treat the performance of this Bill of Lading as terminated and place the Shipment or any part of it at the Merchant's disposal at any port or place whatsoever (whether enclosed in or unloaded from a Container) which the Carrier or Master may consider safe and advisable in the circumstances, whereupon the responsibility of the Carrier in respect of the Shipment shall cease. The Carrier shall nevertheless be entitled to full freight and charges on any Shipment received for transportation and the Merchant shall pay any additional costs of carriage to and delivery and storage of the Shipment at such port or place. Hindrances include, but are not limited to, those caused by: the existence or apprehension of war declared or undeclared, hostilities, warlike or belligerent acts or operations, riots, civil commotions, or other disturbances or demands or directions by any persons in or acting under color of authority; closure of, obstacles in or danger to any waterway; hijacking; blockage of port or place or interdict or prohibition of or restriction on commerce or trading; quarantine, sanitary and other similar regulations or restrictions, strikes, lockouts or other labor troubles whether partial or general, and whether or not involving employees of the Carrier and/or its sub-contractors, congestion of port, wharf, sea terminal or any other place, shortage, absence of obstacles of labor or facilities for discharge, delivery or other handling of the Shipment; epidemics or diseases; act of God, fire; or bad weather, shallow water, ice, landslide or other obstacle in navigation or haulage.

15. **SUBCONTRACTING; EXEMPTIONS AND IMMUNITIES** The Carrier may engage agents and/or independent contractors and their respective servants and agents (including any of its affiliates), on any terms, to perform the carriage, loading, unloading, storing, warehousing, handling and any and all of the Carrier's duties. The Merchant agrees that any of the Carrier's agents and/or independent contractors, including but not limited to stevedores, longshoremen, terminal operators and Inland Carriers, shall be entitled to all exemptions, limitations, conditions, defenses, immunities of liability and liberties to which the Carrier is entitled under the Bill of Lading and/or under law. Under no circumstances shall the Merchant have the benefit of the rights and obligations arising under the Carrier's contract(s) with its agents, employees, and independent contractors, and neither the Carrier nor its agents shall be liable to the Merchant for any breach of the Carrier's contracts with others. Further, Merchant agrees that the aggregate of all claims made pursuant to this bill of lading against the Carrier and/or any of the Carrier's agents and/or independent Contractors shall in no case exceed the limits provided in this Bill of Lading.

16. **TRANSSHIPMENT; INTERMODAL TRANSPORT** (a) In the event of transshipment and/or delivery from and/or to an Interior Point, the Carrier may choose any means of transportation, and forward the Shipment pursuant to any contract of carriage, even if the terms of the Bill of Lading of the Inland Carrier and/or other Carrier contains limitations, defenses and/or exemptions not contained herein; (b) If this Bill of Lading requires the Carrier to pick up and/or deliver at an Interior Point, and the Carrier subcontracts the inland portion of the transport: (i) the Carrier shall have the benefit of all limitations, defenses and exemptions of the Inland Carrier, but in no event shall the Carrier be deprived or have liability greater than, the terms and conditions of this Bill of Lading; (ii) if the Shipment is damaged and/or sustains loss during any portion of the transport other than the Ocean Carriage, or where the Merchant is unable to determine whether the loss and/or damage took place during the Ocean Carriage, the Carrier shall have the benefit of all limitations, defenses and exemptions of the Inland Carrier, but in no event shall the Carrier be deprived of, or have liability greater than, the terms and conditions of this Bill of Lading; (c) If the Merchant pays the Inland Carrier directly for transport to and/or from an Interior Point the Merchant's sole remedy shall be against the Inland Carrier, even where such inland transport is arranged by the Carrier or its agents.

17. **BOTH TO BLAME COLLISION CLAUSE** If the Vessel comes into collision, stranding or other accident with another ship and/or object as a result of negligence of another ship and/or object and any act, neglect or default of the Vessel, master, pilot, agent or employees of the Carrier for which the Carrier is not liable by statute, contract or otherwise, the Merchant undertakes to indemnify the Carrier, for itself and/or as trustee for the owner and/or demise charterer of the Vessel, against all loss, damages and expense and/or against all liability to the other ship and/or her owners insofar as such loss and/or liability represents loss of and/or damage to, and/or any claim whatsoever of the Merchant, paid and/or payable by the other ship and/or her owners to the Merchant and set off, recouped and/or recovered against the Vessel and/or her owner and/or demise charterer and/or the Carrier.

18. **GENERAL AVERAGE; NEW JASON CLAUSE; SALVAGE** (a) General average shall be adjusted in New York in accordance with the York Antwerp Rules 1994 and the laws, customs and practices in force in New York. An average agreement and a bond shall be required from the Merchant prior to delivery of the Shipment but, notwithstanding the foregoing, the Carrier's right to contribution and the Merchant's obligation to make payment shall survive delivery; (b) in the event of accident, danger, damage and/or disaster before or after commencement of the transport under this Bill of Lading, resulting from any cause whatsoever, whether due to negligence or not, for which and/or for the consequences of which the Carrier is not responsible by statute, contract or otherwise, the Shipment and Merchant shall contribute with the Carrier in general average to the payment of any sacrifice, loss and/or expense of a general average nature that may be made or incurred and shall pay all salvage and special charges incurred in respect of the Shipment; (c) If a saving ship is owned and/or

...ription and particulars of the Shipment have been ...n and particulars, including but not limited to the correct and that the Shipment is fit for the transport ...arty; (b) if the Shipment is described as "said to ...r makes no representation as to the accuracy of ...t and/or contents of a Container supplied by the ...y of the Merchant's description; (c) The Merchant ...an, or that the Merchant has the authority of the ...his Bill of Lading; (d) The Merchant warrants that ...ompartment without special protective or climatic ...requirement(s) and has set forth on the other side ...ke, (e) The Merchant hereby warrants that (i) the ...radioactive, damaging to property or persons, or ...ceed the nature of the Shipment, has received the ...r, and the Shipment, the Container and any other ...ant breaches any of the warranties set forth in this ...take any act, including but not limited to rejecting, ...ng it to the Merchant at a place other than stated ...nsation to the Merchant, and the Merchant shall ...g but not limited to indirect and/or consequential ...hipment.

...t to the Carrier not enclosed or stowed in a Con...t, the Carrier may deliver the Shipment unstowed ...ding.

...Shipment to the Carrier in a Container, the Car...r shall not be liable for loss of or damage to the ...the Shipment in the Container. The Merchant or ...ports, shall carefully inspect and clean containers ...the containers shall be prima facie evidence that ...ability for any damage to goods carried resulting ...Merchant warrants that the Shipment is in good ...ackaged, stowed and secured in the Container, ...ier at any time may, but is under no obligation to, ...ackaged, stowed or secured in any respect, the ...on and carry the remainder to destination; require ...obvious deficiency in the securing or stowage. In ...gent for the Merchant, all risk, loss, cost, expense ...ll not be responsible for the condition and/or ac...

...NER; REFRIGERATION If a perishable Ship...nclosed or stowed in a refrigerated Container, the ...ent or into a refrigerated Container and to set and ...h on the other side of this Bill of Lading, and the ...reasonable time after completion of stowage and ...r minus 5 degrees Fahrenheit of the Merchant's ...s required to maintain a temperature of less than ...id treatment.

...RIGERATION (a) If a perishable Shipment is ...ent at the commencement of transport hereunder, ...ant has the temperature listed on the other side ...tic controls properly set. The Merchant has sole ...efore the Container is delivered to the Carrier and ...ility for spoilage or other damage to the Shipment ...hant's instructions stated on the other side of this ...ss than minus 20 degrees Fahrenheit. (b) When ...rrants that the Container is in good working order, ...monitor the Container's thermostatic controls in ...g and to advise the Merchant of any malfunction, ...but shall have the liberty to undertake repairs, all ...t be responsible for the loss of or damage to the ...o arises out of causes for which the Carrier would ...ion for USDA cold treatment.

...ts that it shall take delivery and custody of and ...ail or, if no period is specified or applicable, within ...(a) all of the Carrier's duties and/or liabilities for or ...and liability in connection with the Shipment shall ...xercise any of the Carrier's rights stated in clause...

...or the Carrier may be carried on deck but shall be ...ent stowed in a Container is carried on deck, the ...ng a statement of on deck stowage on the other ...ject to the benefits of COGSA, the Hague Rules, ...ent stowed in a Container on deck. A Shipment ...s carried at the sole risk of the Merchant without ...hipment.

...ormation on which to calculate the freight and/or ...examine, weigh, measure and/or value all or any ...ment is erroneous in any respect, the Carrier may ...t, Merchant and their principals shall be joint and ...enalties, fines and expenses incurred in examining, ...ges and expenses. The Shipment, Merchant and ...loss, damage and/or detention sustained and/or...

...or apprehension of war declared or undeclared, hostilities, warlike or belligerent acts of operations, riots, civil commotions, or other distur... [illegible] ...stoppage, blockage of port or place or interdict or prohibition of or restriction on commerce or trading; quarantine, sanitary and other similar regulations or restrictions; strikes, lockouts or other labor troubles whether partial or general, and whether or not involving employees of the Carrier and/or its sub-contractors; congestion of port, wharf, sea terminal or any other place; shortage, absence or obstacles of labor or facilities for discharge, delivery or other handling of the Shipment; epidemics or diseases; act of God; fire; or bad weather, shallow water, ice, landslide or other obstacle in navigation or haulage.

15. **SUBCONTRACTING; EXEMPTIONS AND IMMUNITIES** The Carrier may engage agents and/or independent contractors and their respective servants and agents (including any of its affiliates), on any terms, to perform the carriage, loading, unloading, storing, warehousing, handling and any and all of the Carrier's duties. The Merchant agrees that any of the Carrier's agents and/or independent contractors, including but not limited to stevedores, longshoremen, terminal operators and Inland Carriers, shall be entitled to all exemptions, limitations, conditions, defenses, limitations of liability and liberties to which the Carrier is entitled under this Bill of Lading and/or under law. Under no circumstances shall the Merchant have the benefit of the rights and obligations arising under the Carrier's contract(s) with its agents, employees, and independent contractors, and neither the Carrier nor its agents shall be liable to the Merchant for any breach of the Carrier's contracts with others. Further, Merchant agrees that the aggregate of all claims made pursuant to this bill of lading against the Carrier and/or any of the Carrier's agents and/or independent Contractors shall in no case exceed the limits provided in this Bill of Lading.

16. **TRANSSHIPMENT; INTERMODAL TRANSPORT** (a) In the event of transshipment and/or delivery from and/or to an Interior Point, the Carrier may choose any means of transportation, and forward the Shipment pursuant to any contract of carriage, even if the terms of the Bill of Lading of the Inland Carrier and/or other Carrier contains limitations, defenses and/or exemptions not contained herein; (b) If this Bill of Lading requires the Carrier to pick up and/or deliver at an Interior Point, and the Carrier subcontracts the inland portion of the transport: (i) the Carrier shall have the benefit of all limitations, defenses and exemptions of the Inland Carrier, but in no event shall the Carrier be deprived of or have liability greater than, the terms and conditions of this Bill of Lading; (ii) If the Shipment is damaged and/or sustains loss during any portion of the transport other than the Ocean Carriage, or where the Merchant is unable to determine whether the loss and/or damage took place during the Ocean Carriage, the Carrier shall have the benefit of all limitations, defenses and exemptions of the Inland Carrier, but in no event shall the Carrier be deprived of, or have liability greater than, the terms and conditions of this Bill of Lading; (c) If the Merchant pays the Inland Carrier directly for transport to and/or from an Interior Point the Merchant's sole remedy shall be against the Inland Carrier, even where such inland transport is arranged by the Carrier or its agents.

17. **BOTH TO BLAME COLLISION CLAUSE** If the Vessel comes into collision, stranding or other accident with another ship and/or object as a result of negligence of another ship and/or object and any act, neglect or default of the Vessel, master, pilot, agent or employees of the Carrier for which the Carrier is not liable by statute, contract or otherwise, the Merchant undertakes to indemnify the Carrier, for itself and/or as trustee for the owner and/or demise charterer of the Vessel, against all loss, damages and expenses and/or against all liability to the other ship and/or her owners insofar as such loss and/or liability represents loss of and/or damage to, and/or any claim whatsoever of the Merchant, paid and/or payable by the other ship and/or her owners to the Merchant and set off, recouped and/or recovered against the Vessel and/or her owner and/or demise charterer and/or the Carrier.

18. **GENERAL AVERAGE; NEW JASON CLAUSE; SALVAGE** (a) General average shall be adjusted in New York in accordance with the York-Antwerp Rules 1994 and the laws, customs and practices in force in New York. An average agreement and a bond shall be required from the Merchant prior to delivery of the Shipment but, notwithstanding the foregoing, the Carrier's right to contribution and the Merchant's obligation to make payment shall survive delivery; (b) In the event of accident, danger, damage and/or disaster before or after commencement of the transport under this Bill of Lading, resulting from any cause whatsoever, whether due to negligence or not, for which and/or for the consequences of which the Carrier is not responsible by statute, contract or otherwise, the Shipment and Merchant shall contribute with the Carrier in general average to the payment of any sacrifice, loss and/or expense of a general average nature that may be made or incurred and shall pay all salvage and special charges incurred in respect of the Shipment; (c) If a saving ship is owned and/or operated by the Carrier, salvage shall be paid as fully as if the said saving ship or ships belonged to strangers.

19. **VALUATION; LIMIT OF LIABILITY** (a) Neither the Carrier, nor their agents and/or independent contractors (including any of its affiliates) shall in any event become liable for any loss or damage to or in connection with the shipment in an amount exceeding U.S. $500 per Package, or in the case of goods not shipped in packages, per freight unit, unless the value of such goods has been declared and inserted in the appropriate space on the other side of this Bill of Lading and any required extra freight charge has been paid therefor. In no event shall the Carrier's liability exceed the invoice value including the cost of freight and insurance of the portion of the Shipment actually damaged; (b) For the purpose of this clause, the term "Package", in addition to including cargo shipped on a pallet, skid, cradle, unitized load, groupage and/or assemblage, shall also include each container, where it contains household goods and/or a Shipment and/or goods not packaged to withstand break bulk handling, whether or not the container is supplied by the Carrier, where it is shipped Freight All Kinds or shipped under lump sum freight rate or is stuffed and sealed by the Merchant, or on their behalf, although the Merchant may have enumerated on the reverse side of this bill of lading the contents of such sealed container, where it contains a liquid or dry bulk cargo carried in a Container, whether or not the Container is supplied by the Carrier. The words "freight unit" includes any physical unit or piece of cargo shipped unpacked, including trailers, trucks, autos and boats irrespective of the weight or measurement unit employed in calculating freight charges; (c) For Intermodal Transport, if the Shipment is damaged and/or sustains loss during any portion of the transport other than the Ocean Carriage, or where the Merchant is unable to determine whether the loss and/or damage took place during the Ocean Carriage, the container shall be deemed the package for the purposes of the $500 per package limitation.

20. **NOTICE OF LOSS OR DAMAGE; TIME FOR SUIT** (a) Notice of loss or damage and the general nature of such loss and/or damage shall be given to the Carrier prior to removal or upon delivery of the Shipment, and the failure to note any damage upon or prior to delivery shall be prima facie evidence that the Shipment was delivered in the same condition as noted in this Bill of Lading. In any event, notice of loss for concealed damage must be given no later than three business days after delivery by the Carrier, and giving of such notice is a condition precedent to maintaining any claim and/or cause of action against the Carrier; (b) the Carrier shall be discharged from all liability in any capacity under this Bill of Lading and/or otherwise, whether in contract or in tort, for loss of and/or damage to the Shipment and/or any other property of the Merchant, unless suit is brought within the shorter of: one year of the date on which the Shipment was delivered or should have been delivered, or such time as may apply by reason of other contracts, rules, tariffs and/or laws in the case of an Intermodal Transport. Suit shall not have been deemed brought unless jurisdiction has been obtained over the Carrier and valid service of process has been affected.

21. **MERCHANT'S LIABILITY AND INDEMNITY** If the Merchant fails, omits and/or neglects to fulfill or perform any of its obligations, responsibilities, warranties, duties and/or functions of whatever nature under this Bill of Lading, including but not limited to the payment of freight, the Merchant and their principals shall be joint and severally liable to the Carrier for and shall defend and indemnify the Carrier against and hold the Carrier harmless from all losses, damages, expenses, claims, fines, penalties, and/or assessments of whatever nature, including but not limited to reasonable attorneys' fees and disbursements incurred in connection therewith.

22. **JURISDICTION** All claims by the Carrier or causes of action against or disputes with Carrier arising out of and/or by reason of this Bill of Lading and/or the relationships created thereby or in connection with the Shipment shall be brought by or against the Carrier exclusively in the United States District Court, Southern District of New York in accordance with the laws of the United States.

23. **APPLICABLE LAW** All rights, duties and/or obligations not specifically otherwise described or incorporated herein shall be determined according to the laws of the United States, or, where there is no governing federal law, according to the laws of the State of New York.

24. **ENTIRE AGREEMENT; VARIATION OF CONTRACT** (a) This Bill of Lading and, if applicable, the terms of any service contract and/or Carrier's tariff, including all the provisions specifically incorporated therein, constitute the contract and the entire agreement between the parties, and any prior agreement, booking note, contract and/or memorandum is superseded hereby except to the extent expressly stated herein; (b) No servant or agent of the Carrier shall have the authority to waive and/or vary the terms of the Bill of Lading, including specifically the time for suit, unless in writing and approved by an authorized representative of the Carrier; (c) If any provision or interpretation of this Bill of Lading is held to be invalid under any law compulsorily applicable to this Bill of Lading, then such provision or interpretation shall be void to that extent but no further.